**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUAN ZALAZAR,[1]<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>Defendants. | Civ. Action No. 24-381 (SDW) (AME) |
| JUAN ZALAZAR,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER LUIS CORREA-MARTI, *in his individual capacity*,<br><br>Defendant. | Civ. Action No. 25-13287 (SDW) (AME)<br><br>**OPINION**<br>August 5, 2026 |

**WIGENTON**, District Judge.

Before this Court is Defendant Officer Luis Correa-Marti's ("Defendant" or "Officer Correa-Marti") Motion to Vacate Default, Consolidate Cases 2:24-381 and 2:25-13287, and to Dismiss *pro se* Plaintiff Juan Zalazar's Amended Complaint (D.E. 20 ("Motion")) pursuant to Federal Rules of Civil Procedure 55(c), 42(a), and 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral

[1] The caption states "Juan Zalzar"; however, this Court has ascertained that Plaintiff's name is Juan Zalazar.

argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, the Motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the heart of the instant matters are the events that unfolded on the night of December 4, 2023. Plaintiff, a resident of the Special Treatment Unit ("STU"), in Avenel, New Jersey pursuant to the New Jersey Sexually Violent Predator Act, N.J. Stat. Ann. §§ 30:4-27.24 *et seq.*, claims that his rights were violated when his property was destroyed on that night.

Plaintiff claims that from around 7 to 8:15 p.m., several correction officers conducted a random search of his room, which is in the STU's North Unit. (Dkt. No. 24-381, D.E. 11-1 ("Amended Complaint" or "AC") ¶¶ 20–21, 23.) In the process of conducting the search, these officers removed "a large quantity of Plaintiff's personal property," piling it "just outside" of Plaintiff's room and in the North Unit dayroom. (*Id.* ¶ 22.) Knowing that the lock-in count was at 9 p.m., Plaintiff was in the process of quickly trying to return his property to his room when he claims that Defendant Sergeant Parmar ("Parmar") suddenly appeared and told Plaintiff "residents [were] not permitted to store any personal property in [the] North Unit dayroom," and kept walking to the officers' desk area. (*Id.* ¶¶ 25–26.)

Plaintiff proceeded to the desk area to explain what he was doing and why, but was rebuffed by Parmar, who then told him: "Go to your room and lock in now." (*Id.* ¶¶ 27–31.) Plaintiff responded, "If I lock in, how do I get my property out of the dayroom and inside my cell?" while "articulating his arms and hands towards his cell and property on the floor of the dayroom." (*Id.* ¶ 31.) Parmar responded by ordering Plaintiff to place his hands behind his back, handcuffing him, and placing him in Temporary Close Custody ("TCC").[2] (*Id.* ¶ 32.) Plaintiff claims that

[2] Plaintiff claims he was denied sex offender specific treatment for months, leading him to be ineligible for a work assignment due to being in TCC. (*Id.* ¶ 36.)

while he was handcuffed, Officer Correa-Marti appeared and destroyed his personal property, including a shoe rack which was of sentimental value to Plaintiff. (*Id.* ¶ 33.) Plaintiff asserts that on that same night, another officer prepared a document describing the event but failed to interview Plaintiff or conduct a greater investigation to verify Parmar's version of the events. (*Id.* ¶ 34.)

On January 23, 2024, Plaintiff filed Case Number 2:24-381 (hereinafter, "the First Action").[3] In the First Action, Plaintiff asserts a Fourteenth Amendment due process clause violation claim against Defendant Correa-Marti for the "impermissible" destruction of his personal property. (*Id.* at 19–21.) On July 12, 2024, Paula Francis accepted the summons for Defendant Correa-Marti, as effectuated by the United States Marshals Service. (Dkt. 24-381, D.E. 12.) On February 21, 2025, the Clerk's Office entered default judgment against Defendant Correa-Marti pursuant to Plaintiff's February 11, 2025 request. (Dkt. No. 24-381, D.E. 15.)

Less than six months later, on July 14, 2025, Plaintiff initiated Case Number 2:25-13287 (hereinafter, "the Second Action"). (Dkt. No. 25-13287, D.E. 1.) In the Second Action, Plaintiff asserts the following causes of action solely against Defendant Correa-Marti: denial of reasonable access to the courts in violation of the First and Fourteenth Amendments (Count I) and retaliation in violation of the Fourteenth Amendment's due process clause (Count II).[4] (Dkt. No. 25-13287,

[3] In its April 16, 2024 decision, this Court dismissed all but two claims of Plaintiff's initial Complaint. (Dkt. No. 24-381, D.E. 4 at 5–7.) This Court "liberally construe[d] the [C]omplaint to allege Officer [Correa-Marti] conducted an unreasonable seizure of Plaintiff's property, his shoe rack, in violation of the Fourteenth Amendment," and stated that claim could proceed. (*Id.* at 6.) Additionally, this Court ruled Plaintiff's claim against Major John Doe, the STU's Institutional Search Plan Coordinator, for a custom of ignoring Defendant Correa-Marti's unreasonable search and seizure practices could proceed. (*Id.*) However, after receiving a letter from Plaintiff seeking clarification as to the status of his claims against Defendants Mirra and Parmar, (Dkt. No. 24-381, D.E. 7), this Court issued an order on June 4, 2024 clarifying Plaintiff could allege additional facts to cure the deficiencies in his claims against those Defendants or raise additional claims, (Dkt. No. 24-381, D.E. 9). On July 2, 2024, Plaintiff filed an Amended Complaint, which is the operative pleading. (Dkt. No. 24-381, D.E. 11.)

[4] This Court construes Count II as asserting a due process claim pursuant to the Fourteenth Amendment and not as a First Amendment retaliation claim.

D.E. 1 at 4–5.) Plaintiff complains that on or about May 14, 2025, following the search of his room by four officers, including Defendant Correa-Marti, Plaintiff discovered several personal property items, including legal documents pertaining to the First Action, had been "seized by . . . Defendant." (*Id.* at 2–3.) Plaintiff maintains that his legal documents were wrongly and unjustifiably confiscated as an act of reprisal. (*Id.* at 4–5.)

On January 30, 2026, Defendant Correa-Marti filed the instant Motion. Defendant seeks to vacate the default judgment entered in the First Action, consolidate the two matters, and moves to dismiss both cases for failure to state a claim. Plaintiff timely opposed. This Court addresses each portion of Defendant's Motion in turn.

## II. DISCUSSION

### A. Motion to Vacate Default

Under Federal Rule of Civil Procedure ("Rule") 55(c), a court may set aside a Clerk's entry of default for "good cause." Fed. R. Civ. P. 55(c). The Third Circuit "does not favor entry of defaults or default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984) (emphasizing that cases should be disposed of on the merits whenever practicable). To determine whether good cause exists, a court weighs: (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether the default resulted from the defendant's culpable conduct. *Id.* at 194–95.

A meritorious defense exists when the defendant's allegations, if established at trial, would constitute a complete defense. *Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136, 140 (3d Cir. 2017) (explaining that a defendant must allege specific facts beyond simple denials but need not satisfy summary judgment standards). The culpability inquiry asks whether

the defendant's conduct rose to the level of willfulness or bad faith—more than mere negligence, but less than knowing disregard. *Id.* at 141.

Defendant Correa-Marti argues good cause exists to vacate the default judgment previously entered against him. (Dkt. No. 24-381, D.E. 20-1 ("Mov. Br.") at 21, 28.) First, he notes he was never properly served in Plaintiff's initial lawsuit and thus there can be no prejudice against Plaintiff or a finding of bad faith on his part. (*Id.* at 25–28.) More specifically, Defendant notes he was never personally served with the Complaint and summons and that Paula Francis, the individual who allegedly received service, certifies she did not accept service on Defendant's behalf. (*Id.* at 26–27; Dkt. No. 24-381, D.E. 20-2, Francis Certification ¶¶ 8–9 (certifying she did not authorize anyone at the STU to accept service and that her signature does not appear on the proof of service form).) Second, Defendant maintains he has several meritorious defenses, such as being entitled to qualified immunity. (Mov. Br. at 24.) Lastly, Defendant cites the confusion pertaining service of process and the delay in receiving these cases in support of his argument that he has demonstrated excusable neglect warranting an extension of time to respond to Plaintiff's Complaint. (*Id.* at 28.)

Plaintiff counters that Defendant has failed to meet his burden on each of these factors. (Dkt. No 24-381, D.E. 21 at 17–20.) In particular, Plaintiff argues Paula Francis's declaration does not meet a hearsay exception and that Defendant's failure to submit his own certification is detrimental to his request to vacate default. (*Id.* at 19–20.)

Although the service of the Amended Complaint is questionable, this Court assumes Defendant Correa-Marti was properly served for the purposes of this Motion. Even making this assumption, Defendant Correa-Marti has demonstrated good cause to vacate the entry of default in this matter. Not only does Defendant assert viable defenses, but the litigation is in the early

stages. To deny the Motion to Vacate and allow the default to stand would produce an unfair result and go against the Third Circuit's preference that matters be adjudicated on their merits. *See In re $55,518.05 in U.S. Currency*, 728 F.2d at 195. Lastly, there is no indication Defendant acted willfully or in bad faith. Upon receiving proper notice in the Second Action, Defendant obtained counsel, sought an extension of time to answer or otherwise move, and subsequently filed this Motion. (Dkt. No. 25-13287, D.E. 6, 9, 10.) Thus, there is good cause to vacate the entry of default.

**B. Motion to Consolidate**

Rule 42(a)(2) permits a court to consolidate actions involving "a common question of law or fact." Consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 497 (1933)). Consolidation "is only a matter of 'convenience and economy in administration,'" with its purpose being to "streamline and economize pretrial proceedings so as to avoid duplication of efforts, and to prevent conflicting outcomes in cases involving similar legal and factual issues." *Id.* (first quoting *Johnson*, 289 U.S. at 497, then quoting *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 158 F.R.D. 562, 571 (S.D.N.Y. 1994)). "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 584 U.S. 59, 77 (2018) (citing 9A Wright & Miller § 2383 (collecting cases)). Courts weigh "the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice." *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998) (citation omitted). The moving party bears the burden of showing consolidation is appropriate. *Heaps v. Delaware Valley Reg'l High Sch. Bd. of Educ.*, No. 24-107, 2026 WL 2192214, at *4 (D.N.J. July 30, 2026).

This Court finds consolidation is warranted. Both actions involve common questions of fact and law. Indeed, the Second Action is borne out of the events and allegations in the First Action, with overlapping parties. Plaintiff alleges similar causes of actions across the two matters—namely violations of his Fourteenth Amendment rights. Both matters are at the early stages of litigation. Given the overlap, and in the interest of judicial efficiency, consolidation is appropriate.

**C. Motion to Dismiss**

**i. Legal Standard**

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). The analysis involves a two-step approach. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). First, the Court parses between the factual and legal elements of a claim, treating "all of the complaint's well-pleaded facts as true," but disregarding any legal conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Second, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

When a plaintiff pleads factual content that enables the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged," a claim has facial plausibility. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.* Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**ii. Analysis**

Across both cases, Plaintiff claims he was wrongfully deprived of his shoe rack and other personal effects in the First Action, and his legal papers in the Second Action, in violation of his Fourteenth Amendment due process rights. Defendant argues both these claims are barred because meaningful post-deprivation remedies for the losses exist and Plaintiff does not plead that these remedies "were unavailable or constitutionally inadequate." (Mov. Br. at 36–40.) Defendant also moves to dismiss Plaintiff's deprivation of access to courts claim, arguing Plaintiff's failure to plead a concrete litigation injury, in the form of a missed deadline, rejected filing, dismissal, or "any other specific court harm," is detrimental to the claim. (Mov. Br. at 34–36.) The viability of each claim is addressed below.

***a. Due Process Claims***

Plaintiff has not adequately pled that Defendant deprived him of his property in violation of his due process rights. An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a procedural due process violation so long as adequate state-post deprivation remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). For both intentional and negligent deprivations, "the state's action is not complete until and unless it

provides or refuses to provide a suitable post[-]deprivation remedy." *Id.* Plaintiff's pleadings fail to set forth what, if any, post-deprivation remedy he has availed himself of, whether he was refused a remedy, or how the post-deprivation remedy was inadequate. *See Farmer v. Plumeri*, No. 22-957, 2023 WL 7151368, at *7 (D.N.J. Oct. 31, 2023) (dismissing a *pro se* plaintiff's deprivation of property claim for failure to state a claim where the plaintiff failed to allege the damage or destruction of his property was accomplished through an established state procedure).

***b. Denial of Access to Courts Claim***

Next, this Court turns to Plaintiff's deprivation of access to courts claim. Inmates have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). A prima facie claim of denial of access to courts requires allegations that (1) prison officials impeded a plaintiff's access to courts and (2) the plaintiff suffered actual injury from his ability to access the courts. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Rivera v. Monko*, 37 F.4th 909, 914–15 (2022). For actual injury, a plaintiff must allege that the denial of access to legal materials caused a potentially meritorious claim to fail. *See Rivera*, 37 F.4th at 915.

Here, to the extent that Defendant Correa-Marti's actions could be construed as impeding Plaintiff's access to the courts, Plaintiff's failure to allege an actual injury is detrimental to his claim. Plaintiff does not make any specific allegations as to how his ability to litigate either one of the actions before the undersigned has been hindered, impeded, or frustrated. On the contrary, Plaintiff timely opposed the instant Motion, which demonstrates Plaintiff's ability to receive mail and service is unimpeded. Plaintiff's denial of access to courts claim is hereby dismissed.

## III. CONCLUSION

In sum, Plaintiff's Amended Complaint in the First Action (Dkt. No. 24-381) and Complaint in the Second Action (Dkt. No. 25-13287) are **DISMISSED WITHOUT**

**PREJUDICE**. Plaintiff shall have thirty (30) days from the date of this opinion to file a Second Amended Complaint. Should Plaintiff elect to do so, the Second Amended Complaint will be filed in the First Action (Dkt. No. 24-381), as these matters are now consolidated.

For the reasons stated above, Defendant's Motion is **GRANTED**.[5] An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
André M. Espinosa, U.S.M.J.

[5] Given that this Court dismissed the Complaint in the Second Action, Defendant's request for an extension to answer, move, or otherwise respond in said action is deemed moot.